IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE NO. 23-03681 (ESL) |
| JUAN MANUEL BARRETO GINORIO | CHAPTER 11 |
| Debtor | |

### OPINION AND ORDER

This case came before the court on January 30, 2024, for a hearing to consider the *Motion to Dismiss* (Case No. 23-0368, Docket No. 47) and *Motion for Relief from Stay* (Case No. 23-0368, Docket No. 51) filed by secured creditor Condado 5, LLC ("Condado"). See *Order and Notice Setting Hearing*, Case No. 23-03681, Docket No. 50; *Order and Notice*, Case No. 23-03681, Docket No. 77.

For the reasons discussed below, the *Motion to Dismiss* is GRANTED.

### UNCONTESTED FACTS[1]

A.      The Debt Owed and Past Related Proceedings

1.      On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended a credit facility to Las Martas, Inc. ("Las Martas"), in the original amount of $1,850,000.00 ("Loan I"). See *Loan Agreement*, Case No. 23-03681, Proof of Claim No. 1-2, Part 4, pp. 1-56. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 1 (first).

2.      The Loan I is a commercial loan which purpose was to consolidate corporate and personal debts for the purchase of land, 5,000 quarts of milk quota, 36 heifers, machinery, equipment and for improvements to Las Martas' facilities. See *Loan Agreement*, Proof of Claim No. 1-2, Part 4, p. 2. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 2 (first).

---

[1] A statement of uncontested facts was not submitted by the parties. Notwithstanding, at the January 30, 2024, hearing, the court asked Debtor's counsel which fact alleged by Condado in the motion to dismiss was or is contested by the Debtor. Debtor's counsel responded as follows: "The allegations are not contested." *Audio of January 30, 2024, Hearing*, Case No. 23-03681, Docket No. 93, Minute 28:00 to 28:18. The facts alleged in the motion to dismiss were restated in the *Pre-Trial Report* (Case No. 23-03681, Docket No. 89).

3. The Debtor, his former spouse (Ms. Maria Elena Hernandez Ruiz), and JM Dairy, Inc. ("JM Dairy") all serve as guarantors to Loan I. See *Loan Agreement*, Case No. 23-03681, Proof of Claim No. 1-2, Part 4, p. 1; *Amended Note*, Case No. 23-03681, Proof of Claim No. 1-2, Part 5, p. 9. See also Cond²ado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 1 (second).

4. Loan I secures a Master Promissory Note in favor of BPPR, and subsequently endorsed in favor of Condado, in the amount of $1,850,000.00 ("Note I", Case No. 23-03681, Proof of Claim No. 1-2, Part 5, p. 1). See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 2 (second).

5. Loan I is also secured by, *inter alia*, 58,700 quarts of Las Martas' bi-weekly milk quota. See Security Agreement executed on January 12, 2005, authenticated through affidavit no. 28,485 before Notary Public Francisco J. Arraiza Donate (Case No. 23-03681, Proof of Claim No. 1-2, Part 7, pp. 1-36). See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 3.

6. On or around October 8, 2007, BPPR extended to the Debtor a credit facility in the amount of $375,000.00 ("Loan II", and collectively with Loan I, the "Loans"). See *Loan Agreement*, Case No. 23-03681, Proof of Claim No. 1-2, Part 4, pp. 1-56; *Resolution by the PR Court of First Instance in Case No. AR2021CV00693*, Case No. 23-03681, Docket No. 47-1, p. 5, ¶ 15. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 5.

7. Las Martas and JM Dairy serve as guarantors to Loan II. See *Loan Agreement*, Case No. 23-03681, Proof of Claim No. 1-2, Part 4, pp. 1-56; *Resolution by the PR Court of First Instance in Case No. AR2021CV00693*, Case No. 23-03681, Docket No. 47-1, p. 5, ¶ 15. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 5.

8. Loan II secures a Note in favor of BPPR, and subsequently endorsed in favor of Condado, in the amount of $375,000.00 ("Note II", *Resolution by the PR Court of First Instance in Case No. AR2021CV00693*, Case No. 23-03681, Docket No. 47-1, p. 6, ¶ 16). See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 6.

---

2

-2-

9. Note I and Note II's maturity dates were extended and ultimately matured on January 12, 2015, and July 8, 2011, respectively. See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶¶ 4, 7.

10. On June 21, 2011, the Debtor, Las Martas, and JM Dairy each filed their first Chapter 12 petition. See Case No. 11-05236, Docket No. 1; Case No. 11-05237, Docket No. 1; Case No. 11-05239, Docket No. 1. See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 8, 9.

11. The above cases were substantively consolidated on June 7, 2011 (Case No. 11-05236, Docket No. 22), and dismissed for material default with the terms of the confirmed plan on January 16, 2018 (Case No. 11-05236, Docket No. 387). See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 8, 9.

12. On April 18, 2019, JM Dairy filed its second Chapter 12 petition (Case No. 19-02168, Docket No. 1), which was voluntarily dismissed on June 28, 2021 (Case No. 19-02168, Docket Nos. 92, 97). See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 10.

13. On December 14, 2018, the Debtor filed his second Chapter 12 petition (Case No. 18-07310, Docket No. 1), which was dismissed on July 25, 2019. See *Minute Entry*, Bankr. Case No 18-07310, Docket No. 62. See Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 11.

14. Also on December 14, 2018, Las Martas filed its second Chapter 12 petition (Case No. 18-07304, Docket No. 1), which was dismissed for unreasonable delay prejudicial to creditors and failure to timely file a confirmable plan on April 22, 2021. See In re Vaqueria Las Martas, Inc., Case No. 18-07304 [Docket No. 251], 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. 2021), *aff'd*, Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022). See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 12.

15. On May 28, 2021, Condado filed a Foreclosure Complaint with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, his former spouse, Las Martas and

JM Dairy.[3] See Case No. 23-03681, Proof of Claim No. 1-2, Part 3, pp. 1-20. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 13.

16.     On August 16, 2022, Las Martas filed its third Chapter 12 bankruptcy petition (Case No. 22-02380, Docket No. 1). See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 25.

17.     On June 15, 2023, this court held a hearing to consider Condado's motion to dismiss Las Martas' third petition (*Minute Entry*, Case No. 22-02380, Docket No. 143). See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 31.

18.     At the hearing, the instant Debtor testified, as president and shareholder of Las Martas, that he planned on filing for bankruptcy to stall the Foreclosure Case, as follows:

Q. Now, Mr. Barreto, if Condado succeeds in its foreclosure case and it gets an order allowing them to foreclose on the farm property, what will you do?

A. I haven't analyzed it yet. But I've spent my entire life working in this business since I was a child.

Q. So will you file any proceedings to stop the foreclosure? ...

A. Yes.

Q. Do you know what kind of proceeding?

A. I haven't analyzed it, it would be analyzed in the moment.

Q. But would that possibly be a bankruptcy filing?

MR. CHICO-BARRIS: I was going to object to the question, Your Honor, because it's leading.

THE COURT: I'm going to overrule the objection. But do note that the answer may not be [in] the best interest of the debtor.

Q. Would that possibl[y] include a bankruptcy filing?

A. Total?

Q. No. Like, a Chapter 13, Chapter 12, Chapter 11?

A. Yes.

---

[3] The court takes judicial notice of the Foreclosure Case pursuant to Fed. R. Evid. 201.

*June 15, 2023, Hearing Transcript*, Case No. 23-03681, Docket No. 47-22, p. 29, lines 16-25; p. 30, lines 1-13. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 31.

19. The Debtor also testified the following during cross-examination:

Q. Your counsel asked you earlier that if Condado succeeds in the foreclosure case filed with the Puerto Rico Court of First Instance, foreclosing that same property, that you would basically file for bankruptcy to stop that foreclosure, correct?

A. Yes.

Q. And the purpose of that would be to stop the execution of a foreclosure judgment, right?

A. Yes.

Q. Do you know how long this loan has been past due?

A. No.

*June 15, 2023, Hearing Transcript*, Case No. 23-03681, Docket No. 47-22, p. 39, lines 22-25; p. 40, lines 1-7. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 31.

20. On September 29, 2023, this court dismissed Las Martas' third bankruptcy case for continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §1208(c)(9). See In re Las Martas, Inc., Case No. 22-02380 [Docket No. 148], 2023 Bankr. LEXIS 2413, 2023 WL 6413170 (Bankr. D.P.R. 2023). In pertinent part, the *Opinion and Order* reads as follows:

> This is the Debtor's third bankruptcy petition, which was filed less than three weeks after the second bankruptcy case was closed, meaning that the Debtor has been almost continuously in bankruptcy for the past four (4) years and nine (9) months. The Debtor was unable to propose a timely confirmable plan pursuant to 11 U.S.C. § 1208(c)(3) in its second bankruptcy proceeding and the case was dismissed. During these past four years and nine months that the Debtor has been in bankruptcy, its farming operations, despite recent optimistic projections, have barely improved. In fact, the data which this Court has thoroughly discussed evince that since the first bankruptcy petition the Debtor has been unable to sustain the dairy farm operations profitably or at least at a break-even point before consideration of debt service. The milk quota utilization rate has decreased significantly from the first bankruptcy (54%) which is the result of Debtor not

having sufficient milking cows and enough cash flow to pay for the direct costs and operational expenses necessary to sustain the dairy farm operations. In the previous case, the Debtor was unable to use Condado's cash collateral because there was a legal issue as to whether Condado had a lien over Debtor's cash collateral. In the instant case, there is also a key legal issue as to whether Condado's security interest milk quota extends to the milk produced and sold to milk processing plants and to the post-petition proceeds which was appealed and a decision on the same is pending. As discussed previously, the Debtor's financial situation has only worsened since the first bankruptcy petition and second bankruptcy petition, not only because there has been a decrease in the assets and an increase in liabilities, but most importantly because there are on-going foreclosure proceedings against the farmland which the Debtor utilizes to run its dairy farm operation. If the foreclosure proceedings are successful, there will be no farming operation. The Court finds that there has been no substantial change in circumstances from the previous case aside from increasing debts and decreasing collateral and the probability that the farmland will be foreclosed by Condado. Moreover, there is no evidence in the historical financial performance of the Debtor in which this court may rely on to determine that there is any reasonable likelihood that this Debtor may be rehabilitated. The estate has continued to diminish for the past four (4) years and nine (9) months and there is no hope of rehabilitation. The Debtors have consistently demonstrated for the past eleven years (in bankruptcy) that they do not have a viable farming operation sufficient to pay expenses and fund a plan and the value of the estate continues to diminish with the passage of time (VLM personal assets) and its liabilities continue to increase. There is also a consistent lack of payment to creditors. The Court concludes that in the instant case, the Debtor does not operate a sustainable milk producing operation which can generate enough monies to pay its operational expenses in addition to the plan payments that will need to commence upon the effective date of the plan. The court finds that the Debtor failed to meet its burden with respect to feasibility.

The Court is mindful that the Debtor's principal has been in the milk industry since 1988. However, the Debtor's financial condition has only worsened throughout the years. Condado's debt has been fully matured since January 12, 2015. The Debtor may not continue to speculate with Condado's money. Moreover, the courts in the administration of Chapter 12 cases "... should strive to preserve [sic] this equity balance between creditors' and debtor's rights." In re Pretzer, 96 B.R. at 794 (citing 132 Cong. Rec. § 10575 *supra*, remarks of Sen. Thurmond).

### Conclusion

For the reasons previously discussed, the Court finds that dismissal is appropriate in this case based on a continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. § 1208(c)(9). The Court also finds that the proposed amended plan of reorganization is not feasible and therefore does not comply with section 1225(a)(6). The Court's analysis as to dismissal conclude at this juncture since one ground is sufficient to dismiss a debtor's case. […]

In re Las Martas, Inc., 2023 Bankr. LEXIS 2413, at *56-60, 2023 WL 6413170, at *16-17 (Bankr. D.P.R. 2023)

21. On November 9, 2023, Las Martas appealed the dismissal of its third bankruptcy case to the U.S. Bankruptcy Appellate Panel for the First Circuit, which is pending. See B.A.P. 1st Cir. Appeal No. 23-26). See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 34.

22. An evidentiary hearing in the Foreclosure Case before the PR Court of First Instance was scheduled for November 9, 2023, at 1:30 p.m. See *Order by the PR Court of First Instance in Case No. AR2021CV00693*, Case No. 23-03681, Docket No. 47-24. See also Condado's Proposed Finding of Facts, *Pre-Trial Report*, Case No. 23-03681, Docket No. 89, ¶ 35.

B. The Instant Bankruptcy Proceeding

23. On November 8, 2023, the Debtor filed the instant third bankruptcy petition. See Case No. 23-03681, Docket No. 1.

24. On November 22, 2023, Condado filed and thereafter amended Proof of Claim No. 1 in the secured amount of $1,680,164.09 (the "Claim"). See Case No. 23-03681, Proof of Claim No. 1-2.

25. On January 2, 2024, Condado filed a *Motion to Dismiss* (Case No. 23-0368, Docket No. 47) seeking dismissal of the instant bankruptcy case for cause under 11 U.S.C. § 1112(b) for lack of good faith and unusual delay that is prejudicial to Condado.

26. On January 4, 2024, Condado filed a *Motion for Relief from Stay* (Case No. 23-0368, Docket No. 51), to which Condado replied on January 23, 2024. See *Reply to Motion for Relief From Stay,* Case No. 23-03681, Docket No. 75.

27. Also on January 23, 2024, the Debtor filed an *Opposition to Motion to Dismiss* (the "*Opposition*", Case No. 23-0368, Docket No. 73). The court notes that the Debtor does not contest or dispute any factual statement made by Condado.

28. On January 29, 2024, Condado filed a *Reply to Opposition to Motion to Dismiss* (the "*Reply*", Case No. 23-03681, Docket No. 88).

29. Also on January 29, 2023, the parties filed a *Pre-Trial Report* (Case No. 23-03681, Docket No. 89). The report summarizes the position of the parties, as espoused in their pleadings,

with the addition of certain objections by the Debtor to the filing of documents in the Spanish language and the taking of judicial notice.

30. On January 30, 2024, the court held a hearing to consider both the *Motion to Dismiss* and the *Motion for Relief from Stay*. See *Order and Notice Setting Hearing*, Case No. 23-03681, Docket No. 50; *Order and Notice*, Case No. 23-03681, Docket No. 77.

31. At the hearing, the court stated that the uncontested facts, as alleged by Condado in the motion to dismiss, establish a *prima facie* case of bad faith, which this court has found may be grounds for cause for the dismissal of a chapter 11 petition even though it is not specifically listed as a cause for dismissal. See *Audio of January 30, 2024, Hearing*, Case No. 23-03681, Docket No. 93, Minute 23:40 to 24:20. The court concluded as follows:

> After considering the documents filed and arguments by the parties the court concluded that Condado 5, LLC established a *prima facie* case of bad faith, which this court finds is cause for dismissal of a Chapter 11 petition pursuant to 11 USC § 1112. The debtor stated his disagreement but declined to present evidence. The court summarized its view for the record and stated that its decision will be in a separate written opinion and order.

*Minute Entry*, Case No. 23-03681, Docket No. 92.

32. The *Motion for Relief From Stay* "is held in abeyance pending a decision on Condado 5 LLC's motion to dismiss." *Minute Entry*, Case No. 23-03681, Docket No. 91.

## LEGAL ISSUES

Whether the Debtor's third bankruptcy petition was filed in bad faith and, consequently, constitutes "cause" for dismissal under Section 1112(b)(1) of the Bankruptcy Code, 11 U.S.C. § 1112(b)(1).

## POSITION OF THE PARTIES

I. Condado's Position

Condado avers there is "cause" to dismiss under 11 U.S.C. § 1112(b) for lack of good faith and unusual delay that is prejudicial to Condado. Condado avers that Debtor has a long history of prior bankruptcy filings, and there is no significant change in financial circumstances or legitimate bankruptcy purpose for the filing of Debtor's third bankruptcy petition other than to further delay

litigation and thwart Condado's rights to foreclose on the fully matured loans owed to it. This, Condado avers, constitutes a bad faith filing and an abuse of the bankruptcy process.

Condado further avers that this court has previously "held that lack of good faith (or bad faith) in filing a Chapter 11 petition constitutes 'cause' for dismissal under section 1112(b)(1)." Case No. 23-03681, Docket No. 88, p. 2, quoting In re Plaza Antillana Inc., 2014 Bankr. LEXIS 634, at 21*, 2014 WL 585299, at *7 (Bankr. D.P.R. 2014), citing In re Costa Bonita Beach Resort, Inc., 479 B.R. 14 (Bankr. D.P.R. 2012).

II.      Debtor's Position

The Debtor avers its third bankruptcy petition serves a *bonafide* bankruptcy purpose. The Debtor also avers that "Condado's argument - that a bad-faith filing can, as a matter of law, arise to a bad-faith filing has not been either endorsed nor accepted by our First Circuit Court of Appeals. In fact, this Honorable Court has correctly noted that the First Circuit Court of Appeals has not endorsed the conclusion that alleged bad faith - in the filing of a bankruptcy case - constitutes "cause" for dismissal under section 1112." Case No. 23-0368, Docket No. 73, pp. 2-3, citing Costa Bonita, *supra*, and In re Capitol Food Corp, 490 F.3d 21 (1st Cir. 2007). Further, "even if an alleged bad-faith filing could - as a matter of law - possibly constitute "cause" for dismissal under Section 1112 - which it does not - here, Condado has failed to establish a prima facie case for "cause" for dismissal." Id., p. 3. The Debtor further avers that assuming, arguendo, that "cause" has been established, dismissal should be denied because unusual circumstance exists and a plan is likely to be confirmed within a reasonable amount of time. The unusual circumstances present are that unsecured creditors are likely to receive distribution under a plan of reorganization.

APPLICABLE LAW AND ANALYSIS

A.      Dismissal Pursuant to 11 U.S.C. § 1112(b), Generally

Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), mandates, after notice and a hearing, the conversion or dismissal of a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes "cause" and the case is devoid of unusual circumstances pursuant to 11 U.S.C. § 1112(b)(2). See 11 U.S.C. § 1112(b)(1). Although the Bankruptcy Code does not define "cause" as that term is used in Section 1112(b), Section 1112(b)(4) provides a non-exhaustive list of circumstances which constitute "cause" for

conversion or dismissal. Because the list of causes is nonexhaustive, a case may be converted or dismissed for other causes. See, *e.g.*, Plaza Antillana, 2014 Bankr. LEXIS 634, 2014 WL 585299.

The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. 2024). "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. The court, after finding cause, has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968, 2008 WL 4531982 (B.A.P. 1st Cir. 2008). However, if the movant proves that there is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4) by a preponderance of the evidence standard, the court must find that movant has established cause. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. 2024).

Once "cause" has been established, the burden shifts to the debtor to identify unusual circumstances that evince that conversion or dismissal is not in the best interest of creditors and the estate. Even, if there are no unusual circumstances, the court may not convert or dismiss a case if the debtor establishes and the court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M. 2008).

B.      Lack of Good Faith (or Bad Faith)

This court, in Costa Bonita, *supra*, held that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" to dismiss pursuant to 11 U.S.C. § 1112(b)(1). This court also rejected the use of the mechanical checklist approach to determine lack of good faith for all cases. In pertinent part, the court stated the following regarding lack of good faith (or bad faith) as a cause for dismissal of a chapter 11 petition:

"Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. § 1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute "cause" to dismiss a Chapter 11 petition under 11 U.S.C. § 1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?, 14 Am. Bankr.Inst. L.Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of the circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code.

Several Circuits have determined that lack of good faith (or bad faith) in filing a chapter 11 bankruptcy petition constitutes "cause" to dismiss or convert a case to Chapter 7 pursuant to 11 U.S.C. § 1112(b). See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068 (5th Cir.1986); In re Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814 (5th Cir.1991); Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); Trident Assocs. Ltd. Partenership v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F.3d 127 (6th Cir.1995); NMSBPCSLDHB, L .P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108 (3rd Cir.2004); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir.1984). The First Circuit has not decided whether lack of good faith (or bad faith) in the filing of a Chapter 11 bankruptcy petition constitutes "cause" under 11 U.S.C. § 1112(b). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F.3d 21, 24 (1st Cir.2007). One court declined the proposition that 11 U.S.C. § 1 112(b) imposes a good faith filing requirement in a SARE case. See In re Victoria Ltd. Partnership, 187 B.R. 54, (Bankr.D.Mass.1995).

The First Circuit has determined that if 11 U.S.C. § 1112(b) imposes a good faith filing requirement, then it is the movant that must establish *prima facie* that the petition was filed in bad faith before the burden shifts to the debtor. See In re Capitol Food Corp., 490 F.3d at 24 ("Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we need not address this matter in the present case. Even the courts which have found a good faith filing requirement would demand that Fields Station first make a *prima facie* showing that Capital Food filed its petition in bad faith."); Farnsworth v. Morse (In re Farnsworth), 2009 Bankr.Lexis 3699, *18, (B.A.P. 1st Cir.2009); In re Miller, 2009 Bankr.Lexis 3351, *4 (Bankr.D.Mass.2009). The First Circuit noted that, "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." In re Capitol Food Corp., 490 F.3d at 25 citing In re Liberate Techs., 314 B.R. 206, 216 (Bankr.N.D.Cal.2004). The First Circuit also observed that a good faith petition must seek to preserve or create some value that would otherwise be lost outside of bankruptcy and that it is not bad faith to seek to gain an advantage from declaring bankruptcy. Id. at 25.

-11-

The determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances. See In re Farnsworth, 2009 Bankr.Lexis 3699, *20 citing Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 482 (1st Cir.2005) *aff'd*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956, fn. 11 (U.S.2007); Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir.2012). Good faith is driven by the congressional intent of Chapter 11 relief. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and exiting bankruptcy relieved of burdensome debts and obligations." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, § 11.1 (5th ed.2011).

The totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the confirmation of the plan). See In re Puffer, 674 F.3d at 81 ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F.3d 78, 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption." Id. 479 B.R. at 39–40.

479 B.R. at 39-40. See also Plaza Antillana, 2014 Bankr. LEXIS 634, 2014 WL 585299 (finding that movant established *prima facie* that debtor filed its bankruptcy petition in bad faith. "The desperate resort to filing for bankruptcy on the eve of a consented foreclosure, without ongoing operations and inability to service the secured debt, is atypical conduct which constitutes an abuse of the bankruptcy process."); In re Rodriguez, 2022 Bankr. LEXIS 1341, 2022 WL 1308081 (Bankr. D.P.R. 2022) (finding cause pursuant to 11 U.S.C. § 1112(b) for filing a petition in bad faith. No "unusual circumstances" were demonstrated).

This court's analysis of bad faith as a cause for dismissal of a bankruptcy petition was cited with approval and applied by the U.S. Bankruptcy Appellate Panel for the First Circuit (the "Panel") in <u>La Trinidad Elderly LP SE</u>, 627 B.R. 779 (1st Cir. BAP 2021). In pertinent part, the Panel stated the following:

> The issue of whether lack of good faith ("bad faith") constitutes cause for dismissal is "unsettled," and "debated." The First Circuit "has expressly declined to decide" the issue. Nonetheless, "[t]here is a well-developed body of case law that holds that chapter 11 petitions can be dismissed for lack of good faith." Several courts of appeals have determined that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" to dismiss or convert a case under § 1112(b). In holding that lack of good faith could constitute cause for dismissal, the Third Circuit explained:

>> Four factors guide our adoption of a good faith standard—the permissive language of § 1112(b), viewed in light of its legislative history; the decisions of our sister courts of appeals; the equitable nature of bankruptcy; and the purposes underpinning Chapter 11.

> The legislative history of the statute reflects that "[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases."

> "[T]he overwhelming majority of courts considering the issue agree that an implicit good faith filing requirement exists under § 1112(b), and that a Chapter 11 case may be dismissed for cause if it was filed in bad faith." "The equitable nature of [the 'for cause'] determination supports the construction that a debtor's lack of 'good faith' may constitute cause for the dismissal of a petition." Most bankruptcy courts and at least one district court within this circuit that have considered the issue in published opinions have also concluded that bad faith constitutes cause for dismissal. The Panel has not yet addressed this issue in the chapter 11 context, although it has previously ruled that lack of good faith is grounds for dismissal of a chapter 13 petition.

> We are persuaded by the abundant, well-reasoned authority holding that lack of good faith can constitute cause for dismissal of a chapter 11 petition under § 1112(b). Accordingly, the bankruptcy court below did not commit error when it so ruled.

627 B.R. at 799-800 (citations omitted).

Here, Condado alleges that the Debtor filed its bankruptcy petition in bad faith. The uncontested facts in this case, as alleged by Condado in the *Motion to Dismiss* and the *Pre-Trial Report*, clearly show that the Debtor has filed sequential bankruptcy petitions in an effort to stall

-13-

the foreclosure of the collateral securing the Loans owed to Condado. The latest attempt to further delay being the filing of the instant third petition. The forgoing is further supported by the Debtor's own testimony and constitutes an abuse of the bankruptcy process. See *June 15, 2023, Hearing Transcript*, Case No. 23-03681, Docket No. 47-22, p. 29, lines 16-25; p. 30, lines 1-13; p. 39, lines 22-25; p. 40, lines 1-7. The court also notes that the Debtor declined to present evidence at the January 30, 2024, hearing. Thus, no "unusual circumstances" have-been demonstrated.

Therefore, the court concludes that Condado has established *prima facie* that Debtor filed its bankruptcy petition in bad faith, and finds that "cause" for dismissal under 11 U.S.C. § 1112(b)(1) exists for lack of good faith (or bad faith) in the filing of this bankruptcy petition.

CONCLUSION

For the reasons stated herein, Condado's *Motion to Dismiss* (Case No. 23-0368, Docket No. 47) is GRANTED. Consequently, the case is dismissed and the court need not decide whether relief from stay is appropriate.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of February 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

-14-