## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 23-03681 (ESL) |
| JUAN MANUEL BARRETO GINORIO | CHAPTER 11 |
| Debtor. | |

### PRE-TRIAL REPORT
(Related ECF Nos. 138)

TO THE HONORABLE COURT:

COME NOW the debtor Juan Manuel Barreto Ginorio (the "Debtor") and secured creditor Condado 5, LLC ("Condado"), through their respective undersigned attorneys, and in compliance with the *Amended Order and Notice Setting Hearing* (ECF No. 138) submit this Pre-Trial Report as follows:

### I.     Statement of the Issues

i.     Condado's Statement of the Issues

1.     Whether this case should be dismissed.

### II.     Uncontested Facts

i.     Stipulated uncontested facts

1.     On November 8, 2023, the Debtor filed the instant bankruptcy petition (ECF No. 1).

2.     On January 2, 2024, Condado filed a *Motion to Dismiss* (ECF No. 47), to which the Debtor opposed on January 23, 2024 (ECF No. 73), and Condado replied on January 29, 2024 (ECF No. 88).

3.     On January 29, 2024, the Debtor and Condado filed a *Pretrial Report* (ECF No. 89).

4.     On January 30, 2024, the Court held a hearing to consider the dismissal contested matter. *See Minute Entry*, ECF No. 92.

5.     On February 22, 2024, the Court entered an *Opinion and Order* (ECF No. 104)

dismissing the instant case.

6.      As of February 22, 2024, when the Bankruptcy Court entered the *Opinion and Order* dismissing the Bankruptcy Case, the Debtor had filed the November 2023 MOR (ECF No. 56), the December 2023 MOR (ECF No. 72), and the January 2024 MOR (ECF No. 103).

7.      On March 21, 2024, the Debtor filed a *Notice of Appeal* (ECF No. 110) to the US District Court for the District of Puerto Rico in Civil Case No. 24-1148 (ADC).

8.      On August 20, 2025, the District Court issued an *Opinion and Order* and *Judgment* partially reversing the dismissal order that was docketed into the instant bankruptcy case (ECF Nos. 132 and 133).

9.      On September 17, 2025, Condado filed a *Motion to Inform Notice of Election Pursuant to Section 1111(b) of the Bankruptcy Code* (ECF No. 134).

10.      On October 24, 2025, Condado filed a renewed *Motion to Dismiss* (ECF No. 135) under § 1112(b)(4)(F) (failure to file timely MORs).

11.      The Debtor filed an *Opposition to the Motion to Dismiss* on November 7, 2025 (ECF No. 143).

12.      On November 6, 2025, the Debtor filed the August 2025 MOR (ECF No. 141) and the September 2025 MOR (ECF No. 142).

ii.      <u>Condado's Proposed Uncontested Facts</u>

1.      On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to Las Martas a credit facility in the amount of $1,850,000.00 (the "Loan").  See *Loan Agreement* (Proof of Claim No. 1-2, Part 4, pp. 1-56).

2.      The *Loan Agreement* is a commercial loan which purpose was to consolidate corporate and personal debts for the purchase of land, 5,000 quarts of milk quota, 36 heifers, machinery, equipment and for improvements to Las Martas' facilities.  See <u>Loan</u> *Agreement*, Proof of Claim No. 1-2, Part 4, p. 2.

2.      The Debtor, his former spouse (Ms. Maria Elena Hernandez Ruiz), and JM Dairy,

Inc. ("JM Dairy") all serve as guarantors to the Loan.  See *Loan Agreement*, Proof of Claim No. 1-2, Part 4, p. 1 and *Amended Note*, Proof of Claim No. 1-2, Part 5, p. 9.

3.        The *Loan Agreement* secures a *Master Promissory Note* in favor of BPPR, and subsequently endorsed in favor of Condado, in the amount of $1,850,000.00 (the *"Note I",* Proof of Claim No. 1-2, Part 5, p. 1).

4.        The Loan is also secured by, *inter alia*, 58,700 quarts of Las Martas, Inc.'s ("Las Martas", the Debtor's corporation) bi-weekly milk quota.  See *Security Agreement* executed on January 12, 2005, authenticated through affidavit no. 28,485 before Notary Public Francisco J. Arraiza Donate (Proof of Claim No. 1-2, Part 7, pp. 1-36.).

5.        *Note I* was to be repaid in a term of five (5) years, but BPPR agreed to extend it for ten (10) more years, which ultimately matured and has been past due and payable since January 12, 2015, to wit, **over then (10) years ago**.  See *Amended Note I*, Proof of Claim No. 1-2, Part 5, p. 22.

6.        On or around October 8, 2007, BPPR extended to the Debtor a credit facility in the amount of $375,000.00 (the "Loan II").  See the *Resolution* by the PR Court of First Instance, Case No. AR2021CV00693, SUMAC No. 136, Exhibit I, ECF No. 47-1**,** p. 5, ¶ 15.  Las Martas and JM Dairy serve as guarantors to Loan II.  See id.

7.        Loan II secures a *Note* in favor of BPPR, and subsequently endorsed in favor of Condado, in the amount of $375,000.00 (the *"Note II", Resolution* by the PR Court of First Instance, Case No. AR2021CV00693, SUMAC No. 136, ECF No. 47-1, p. 6, ¶ 16).

8.        On April 20, 2011, *Note II* was amended to extend the maturity date to **July 8, 2011**, and has been matured **over twelve (12) years ago**.  See *Resolution* by the PR Court of First Instance, Case No. AR2021CV00693, SUMAC No. 136, ECF 47-1**,** p. 7, ¶ 23.

9.        On June 21, 2011, the Debtor filed his first Chapter 12 petition (Bankr. Case No. 11-05236-ESL12), which was substantively consolidated with Las Martas' first bankruptcy petition (Bankr. Case No. 11-05237-ESL12).  The cases were substantively consolidated (Bankr. Case

No. 11-05236-ESL12, ECF No. 22) and then dismissed on <u>January 16, 2018</u> for material default with the terms of the confirmed plan on <u>August 30, 2018</u>. <u>See</u> Bankr. Case No. 11-05236-ESL12, ECF Nos. 386 and 387 (dismissed upon the Chapter 12 Trustee's request under 11 U.S.C. § 1208(c)(1),(6) for <u>unreasonable delay</u> prejudicial to creditors and <u>material default with respect to the terms of a confirmed plan</u>).

10.     Also on June 21, 2011, JM Dairy (Debtor's corporation and guarantor to the loans with Condado) filed a Chapter 12 bankruptcy petition (Bankr. Case No. 11-05239-ESL, ECF No. 1), which was also consolidated with Las Martas' first bankruptcy case (Bankr. Case No. 11-05239-ESL, ECF No. 19) and dismissed on <u>January 16, 2018</u> (Bankr. Case No. 11-05236-ESL12, ECF No. 387).

11.     On April 18, 2019, JM Dairy filed a <u>second</u> bankruptcy petition (Bankr. Case No. 19-02168-ESL, ECF No. 1), which was dismissed on June 28, 2021 upon Condado's request **for failure to file timely monthly operating reports** (Bankr. Case No. 19-02168-ESL, ECF Nos. 82, 83, 84, 87 and 92).

12.     Months later, on December 14, 2018, the Debtor filed his <u>second</u> Chapter 12 petition (Case No. 18-07310-ESL12, ECF No. 1), which was <u>dismissed</u> on <u>July 25, 2019</u>. <u>See</u> *Minute Entry*, Bankr. Case No 18-07310-ESL12, ECF No. 62. **<u>Importantly, the Debtor did not file a single MOR during 7-month Second Bankruptcy Case.</u>**

13.     Also on December 14, 2018, Las Martas (Debtor's corporation) filed a <u>second</u> Chapter 12 petition (Case No. 18-07304-ESL12, ECF No. 1). About 2½ years later, on <u>April 22, 2021</u>, the case was dismissed through an *Opinion and Order* for <u>unreasonable delay</u> prejudicial to creditors and <u>failure to timely file a confirmable plan</u>. <u>See</u> *Opinion and Order*, Bankr. Case No. 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). Las Martas appealed to the U.S. Bankruptcy Appellate Panel for the First Circuit (B.A.P. 1st Cir. Appeal No. 22-17), but the B.A.P. affirmed the dismissal. <u>See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.)</u>, 638 B.R. 482 (B.A.P. 1st Cir.

2022)[1].

14.     On May 28, 2021, Condado filed a *Foreclosure Complaint* with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, his former spouse and co-guarantor (Ms. Maria E. Hernandez Ruiz), Las Martas and JM Dairy (Debtor's corporations and further co-guarantors of the Loans).  See Proof of Claim No. 1-2, Part 3, pp. 1-20.

15.     On October 5, 2021, Las Martas filed with the PR Court of First Instance its first *Motion to Stay the Foreclosure Case* while its Appeal to the B.A.P. was pending (Case No. AR2021CV00693, SUMAC No. 43, ECF No. 47-2), which forced Condado to prepare and file an *Opposition* thereto (Case No. AR2021CV00693, SUMAC No. 44, ECF No. 47-3).

16.     On October 19, 2021, the PR Court of First Instance denied Las Martas' request to stay the Foreclosure Case (Case No. AR2021CV00693, SUMAC No. 48, ECF No. 47-4).

17.     Thereafter, on February 2, 2022, Condado filed with the PR Court of First Instance a *Motion for Summary Judgment* in the Foreclosure Case against the Defendants, including the Debtor (Case No. AR2021CV00693, SUMAC No. 63, ECF No. 47-5).

18.     The PR Court of First Instance ordered the defendants to respond to the *Motion for Summary Judgment* in thirty (30) days (Case No. AR2021CV00693, SUMAC No. 64, ECF No. 47-6).  Notwithstanding, at the hearing held on February 9, 2022, the Defendants, *including the Debtor herein*, requested the PR Court of First Instance to hold the resolution of Condado's motion for summary judgment in abeyance until they conducted discovery, and despite Condado's opposition, the Court granted 20 days from such hearing to conduct discovery.  See *Minute Entry*, Case No. AR2021CV00693, SUMAC No. 67, ECF No. 47-7).

19.     On March 23, 2022, the Debtor filed a *Motion for Extension of Time to Respond to Condado's Motion for Summary Judgment* requesting an additional thirty (30) days to respond

---

[1] Ironically, this is the *Opinion and Order* from the BAP affirming the dismissal of Las Martas' Second Bankruptcy Case for, *inter alia*, failure to file timely monthly operating reports.

(Case No. AR2021CV00693, SUMAC No. 88, ECF No. 47-8).

20.     On March 25, 2022, Condado filed a *Partial Opposition to the Debtor's Motion Requesting an Extension of Time to Respond to Condado's Motion for Summary Judgment* sustaining that the extension of time sought by the Debtor was excessive, unreasonable and atypically lengthy (Case No. AR2021CV00693, SUMAC No. 89, ECF No. 47-9).

21.     On March 29, 2022, the PR Court of First Instance entered an *Order* granting the Debtor a *final extension* of fifteen (15) days to respond to Condado's *Motion for Summary Judgment* (Case No. AR2021CV00693, SUMAC No. 93, ECF No. 47-10).

22.     Notwithstanding, on April 13, 2022, the Debtor filed with the PR Court of First Instance *another* motion requesting *additional time* to file his opposition to Condado's request for summary judgment (Case No. AR2021CV00693, SUMAC No. 98, ECF No. 47-11).

23.     As a result, on April 18, 2022, the PR Court of First Instance issued another *Order* staying the resolution of Condado's motion for summary judgment (Case No. AR2021CV00693, SUMAC No. 99, ECF No. 47-12), from which Condado sought reconsideration (Case No. AR2021CV00693, SUMAC No. 100, ECF No. 47-13).

24.     On July 5, 2022, the PR Court of First Instance held a hearing to consider the pending matters and granted the Defendants, including the Debtor, a *final deadline* of 20 days to file an opposition to Condado's motion for summary judgment (Case No. AR2021CV00693, SUMAC No. 109, ECF No. 47-14).

25.     On August 8, 2022, Las Martas and JM Dairy filed their *Opposition to Summary Judgment* (Case No. AR2021CV00693, SUMAC No. 120, ECF No. 47-15).

26.     On August 16, 2022, Las Martas filed a third Chapter 12 bankruptcy petition (Bankr. Case No. 22-02380-ESL12, ECF No. 1).

27.     On August 24, 2022, Las Martas once again filed with the PR Court of First Instance an *Urgent Motion to Stay* the **whole** Foreclosure Case (Case No. AR2021CV00693, SUMAC No. 129, ECF No. 47-16), not just partially against Las Martas.  That same day, Condado

filed an *Opposition* requesting that the stay be made applicable *only* in favor of Las Martas (Case No. AR2021CV00693, SUMAC No. 130, ECF No. 47-17).

28.     On August 31, 2022, the PR Court of First Instance entered a *Partial Judgment* staying the Foreclosure Case *only* with regards to Las Martas (Case No. AR2021CV00693, SUMAC No. 135, ECF No. 47-18).

29.     On September 1, 2022, Condado filed a *Motion to Dismiss* Las Martas' <u>third</u> Chapter 12 bankruptcy petition (Bankr. Case No. 22-02380-ESL12, ECF No. 22).

30.     On September 15, 2022, the PR Court of First Instance issued a *Resolution* partially denying Condado's *Motion for Summary Judgment* finding two disputed facts: (i) the amounts of the debt; and (ii) whether the payments from Suiza Dairy had been duly credited to the debt (Case No. AR2021CV00693, SUMAC No. 136, ECF No. 47-19, p. 15, § III).  The Court found that an evidentiary hearing was necessary to determine if and how the Suiza Dairy payments were being credited to the debt to ascertain the final amounts owed.

31.     On September 30, 2022, Condado filed a *Partial Motion for Reconsideration* of the *Resolution* by the PR Court of First Instance denying its *Motion for Summary Judgment* (Case No. AR2021CV00693, SUMAC No. 137, ECF No. 47-20), which was ultimately denied on June 29, 2023 (Case No. AR2021CV00693, SUMAC No. 147, ECF No. 47-21).

32.     Meanwhile, on June 15, 2023, the Court held a hearing to consider the *Motion to Dismiss* Las Martas' <u>third</u> Chapter 12 bankruptcy petition (*Minute Entry,* Case No. 22-02380, ECF No.143).   At the hearing, the Debtor testified as president and shareholder of Las Martas (*Transcript*, ECF No. 47-22, p. 19, lines 21-25) how had planned the foregoing scheme to stall the Foreclosure Case as follows:

> Q. Now, Mr. Barreto, if Condado succeeds in its foreclosure case and it gets an order allowing them to foreclose on the farm property, what will you do?
>
> A. I haven't analyzed it yet.  But I've spent my entire life working in this business since I was a child.
>
> Q. So will you file any proceedings to stop the foreclosure?

...

A. Yes.

Q. Do you know what kind of proceeding?

A. I haven't analyzed it, it would be analyzed in the moment.

Q. But would that possibly be a bankruptcy filing?

MR. CHICO-BARRIS:  I was going to object to the question, Your Honor, because it's leading.

THE COURT:  I'm going to overrule the objection.  But do note that the answer may not be the best interest of the debtor.

Q. Would that possibl[y] include a bankruptcy filing?

A. Total?

Q. No.  Like, a Chapter 13, Chapter 12, Chapter 11?

A. Yes.

*Transcript*, ECF No. 47-22, p. 29, lines 19-25, and p. 30, lines 1-13.  He also testified during cross-examination as follows:

Q. Your counsel asked you earlier that if Condado succeeds in the foreclosure case filed with the Puerto Rico Court of First Instance, foreclosing that same property, that you would basically file for bankruptcy to stop that foreclosure, correct?

A. Yes.

Q. And the purpose of that would be to stop the execution of a foreclosure judgment, right?

A. Yes.

Q. Do you know how long this loan has been past due?

A. No.

*Transcript*, ECF No. 47-22, p. 39, lines 22-25, and p. 40, lines 1-7.

33.    After taking the dismissal contested matter under advisement, on September 29, 2023, this Court issued an *Opinion and Order* dismissing Las Martas' third bankruptcy case "based on a continuing loss to or diminution of the Debtor's estate and the absence of reasonable

likelihood of rehabilitation pursuant to 11 U.S.C. §1208(c)(9)". *Opinion and Order*, Bankr. Case

No. 22-02380-ESL12, ECF No. 148, p. 34, 2023 Bankr. LEXIS 2413, 2023 WL 6413170 (Bankr.

D.P.R. 2023).  The Court found that Las Martas' proposed amended plan of reorganization was

not feasible and therefore did not comply with Section 1225(a)(6) of the Bankruptcy Code.  Id.  It

further concluded as follows:

> the Debtor's financial situation has only worsened since the first bankruptcy
> petition and second bankruptcy petition, not only because there has been a
> decrease in the assets and an increase in liabilities, but most importantly because
> there are on-going foreclosure proceedings against the farmland which the Debtor
> utilizes to run its dairy farm operation.  If the foreclosure proceedings are
> successful, there will be no farming operation.  The Court finds that there has been
> no substantial change in circumstances from the previous case aside from
> increasing debts and decreasing collateral and the probability that the farmland will
> be foreclosed by Condado.  Moreover, there is no evidence in the historical
> financial performance of the Debtor in which this court may rely on to determine
> that there is any reasonable likelihood that this Debtor may be rehabilitated.  The
> estate has continued to diminish for the past four (4) years and nine (9) months
> and there is no hope of rehabilitation.  The Debtors have consistently
> demonstrated for the past eleven years (in bankruptcy) that they do not have a
> viable farming operation sufficient to pay expenses and fund a plan and the value
> of the estate continues to diminish with the passage of time (VLM personal assets)
> and its liabilities continue to increase.  There is also a consistent lack of payment
> to creditors.  The Court concludes that in the instant case, the Debtor does not
> operate a sustainable milk producing operation which can generate enough
> monies to pay its operational expenses in addition to the plan payments that will
> need to commence upon the effective date of the plan. The court finds that the
> Debtor failed to meet its burden with respect to feasibility.  The Court is mindful
> that the Debtor's principal has been in the milk industry since 1988. However, the
> Debtor's financial condition has only worsened throughout the years. Condado's
> debt has been fully matured since January 12, 2015.  **The Debtor may not**
> **continue to speculate with Condado's money.**

*Opinion and Order*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr.

LEXIS 2413, at *59, 2023 WL 6413170, at *17 (boldface and underline added).

34.    On September 29, 2023, Condado also filed with the PR Court of First Instance a

*Motion for Evidentiary Hearing* in the Foreclosure Case to consider the only pending matter

remaining, to wit: (i) the amounts owed, and (ii) whether the payments from Suiza Dairy had been

duly credited to the debt (Case No. AR2021CV00693, SUMAC No. 148, ECF No. 47-23).

35.    On November 9, 2023, Las Martas appealed the dismissal *Opinion and Order* to

the U.S. Bankruptcy Appellate Panel for the First Circuit (B.A.P. 1st Cir. Appeal No. 23-026).

36.    On October 23, 2023, the PR Court of First Instance scheduled an evidentiary hearing for <u>November 9, 2023</u> (Case No. AR2021CV00693, SUMAC No. 151, ECF No. 47-24).

37.    At the eve of that evidentiary hearing with the PR Court of First Instance, to wit, <u>November 8, 2023</u>, the Debtor filed the instant **<u>third</u>** bankruptcy petition (ECF No. 1).  With regards to the instant third bankruptcy petition, <u>the Debtor reported having substantially the same assets and debts as in his previous bankruptcy cases</u>.  That is, there are no *significant* changes in circumstances (financial or otherwise) between the instant case and the Debtor's previously filed bankruptcy petitions.  For instance, in his <u>second</u> bankruptcy case, the Debtor valued the Barrio Hato Abajo property at <u>$205,000.00</u> and the Barrio Naranjito property at <u>$108,118.00</u> in *Schedule A/B* (Case No. 18-07310-ESL12, ECF No. 30, pp. 2-3, ¶ 1.1-1.2), while in the instant case he values the Barrio Hato Abajo property at <u>$205,000.00</u> and the Barrio Naranjito property at <u>$108,000.00</u> in *Schedule A/B* (ECF No. 18, pp. 1-2, ¶ 1.1-1.2).  Also, the Debtor informed having <u>$1,823,382.27</u> in total liabilities in his previous <u>second</u> bankruptcy case (Case No. 18-07310-ESL12, ECF No. 1, p. 14), whereas in the instant case, the Debtor informed having <u>$1,656,953.03</u> in total liabilities (ECF No. 18, p. 35).  We note that as of today, Condado's secured claim *alone* amounts to <u>$1,680,164.09</u> (Proof of Claim No. 1-2).  In other words, the Debtor foretold at the Las Martas' evidentiary hearing, the filing of the instant third bankruptcy case is targeted *only* against Condado with the sole and exclusive purpose of staying the Foreclosure Case of the Loans that matured back on **<u>January 12, 2015</u>** and **<u>April 8, 2011</u>**.  See *Transcript*, ECF No. 47-22, p. 39, lines 22-25, and p. 40, lines 1-7; *Resolution* by the PR Court of First Instance, Case No. AR2021CV00693, SUMAC No. 136, ECF No. 47-1.

38.    The very next day, November 9, 2023, hours before the evidentiary hearing was to take place, the Debtor filed <u>another</u> *Motion to Stay* the <u>*whole*</u> Foreclosure Case (Case No. AR2021CV00693, SUMAC No. 154, ECF No. 47-25).  Later that same day, the PR Court of First Instance converted the evidentiary hearing into a status conference (Case No. AR2021CV00693,

SUMAC No. 156, ECF No. 47-26).

39.     At that converted status conference, counsel for Las Martas (Debtor's corporation) argued that the case should be *wholly* stayed upon the bankruptcy petition filed by the Debtor but would submit its position in writing, for which the PR Court of First Instance granted 20 days. *Minute Entry*, Case No. AR2021CV00693, SUMAC No. 160, ECF No. 47-27, p. 2.

40.     On November 23, 2023, the Debtor's ex-wife, Ms. Maria E. Hernandez Ruiz (guarantor to Condado's Loans and codefendant in the Foreclosure Case) requested that the *whole* Foreclosure Case be stayed upon the bankruptcy petition filed by the Debtor.  See *Motion to Stay Proceedings*, SUMAC No. 159, ECF No. 47-28, p. 3, ¶ 11.

41.     Similarly, on November 23, 2023, JM Dairy (Debtor's corporation, guarantor to the loan with Condado and co-defendant in the Foreclosure Case) filed a joinder to the Debtor's ex-wife's request to stay the *whole* Foreclosure Case.  See *Motion for Joinder,* SUMAC No. 170, ECF No. 47-29.

42.     On December 13, 2023, Condado filed an *Opposition* to the requests to stay the whole Foreclosure Case by JM Dairy and Ms. Maria E. Hernandez Ruiz (SUMAC No. 176, ECF No. 47-30).  The matter is still pending adjudication.  Notwithstanding, as of today, the PR Court of First Instance has not been able to hold an evidentiary hearing to determine the actual amounts owed as a direct consequence of the Debtor's attempts to stall the Foreclosure Case, joined by his corporations (Las Martas and JM Dairy) and his ex-wife.

43.     On January 2, 2024, Condado filed a *Motion to Dismiss* (ECF No. 47), to which the Debtor opposed on January 23, 2024 (ECF No. 73), and Condado replied on January 29, 2024 (ECF No. 88).

44.     On January 29, 2024, the Debtor and Condado filed a *Pretrial Report* (ECF No. 89).

45.     On January 30, 2024, the Court held a hearing to consider the dismissal contested matter.  *See Minute Entry*, ECF No. 92.

46.     On February 22, 2024, the Court entered an *Opinion and Order* (ECF No. 104) dismissing the instant case.

47.     On March 21, 2024, the Debtor filed a *Notice of Appeal* (ECF No. 110) to the US District Court for the District of Puerto Rico in Civil Case No. 24-1148 (ADC).

48.     On August 20, 2025, the District Court issued an *Opinion and Order* and *Judgment* partially reversing the dismissal order which were duly entered into the bankruptcy docket (ECF Nos. 132 and 133).  In summary, the District Court ruled that this Court considered documents in the Spanish language to reach the bad faith ruling and remanded for further proceedings.  The entry of the District Court's *Opinion and Order* and *Judgment* into this Court's Docket (ECF Nos. 132 and 133) constitutes the mandate, which reinstated the instant bankruptcy case.

49.     After the reinstatement of this case, on September 17, 2025, Condado filed a *Motion to Inform Notice of Election Pursuant to Section 1111(b) of the Bankruptcy Code* (ECF No. 134).

50.     On October 24, 2025, Condado filed a renewed *Motion to Dismiss* (ECF No. 135) under § 1112(b)(4)(F) (failure to file timely MORs).  At the time Condado filed its *Motion to Dismiss* on October 24, 2025, no MOR had been filed for any month since January 2024 (ECF No. 135, ¶ 10), and particularly, No MOR had been filed for <u>August 2025</u>, <u>September 2025</u>, or any subsequent month after this case was reinstated upon the District Court's *Opinion and Order* and *Judgment* vacating the dismissal order (ECF Nos. 132 and 133).  The Debtor did not request additional time to file MORs once the case was remanded and reinstated.

51.     The Debtor filed an *Opposition to the Motion to Dismiss* on November 7, 2025 (ECF No. 143) claiming that one MOR was filed on November 6, 2025 (ECF 1No. 143, ¶ 23).

<u>Noncompliance with MORs</u>

52.     In the Debtor's first bankruptcy case, which was substantively consolidated with Las Martas' <u>first</u> bankruptcy petition (Bankr. Case No. 11-05236-ESL12, ECF No. 22), the Debtor filed thirty-two (32) monthly operating reports during the pendency of the case. Of those thirty-two

reports, eight (8) were filed late.

53.     In Las Martas' Second Chapter 12 bankruptcy case (Bankr. Case No. 18-07304-ESL12), filed on December 14, 2018, Las Martas filed twenty-eight (28) monthly operating reports during the pendency of the case. Of those twenty-eight (28) reports, seventeen (17) were filed late, and one (1) was not filed, a sixty-four percent (64%) late filing rate. The delays ranged from one (1) day to eighty-four (84) days past the applicable deadline. The specific filing delays were as follows:

(a)     December 2018 MOR (ECF No. 67): due January 21, 2019, filed April 15, 2019—eighty-four (84) days late;

(b)     Incorrect January 2019 MOR (ECF No. 68): due February 21, 2019, filed April 15, 2019—fifty-three (53) days late;

(c)     February 2019 MOR (ECF No. 69): due March 21, 2019, filed April 15, 2019—twenty-five (25) days late;

(d)     Corrected January 2019 MOR (ECF No. 71): due February 21, 2019, filed April 21, 2019—fifty-nine (59) days late;

(e)     March 2019 MOR (ECF No. 82): due April 21, 2019, filed May 12, 2019—twenty-one (21) days late;

(f)     April 2019 MOR (ECF No. 83): due May 21, 2019, filed May 31, 2019—ten (10) days late;

(g)     Amended June 2019 MOR (ECF No. 91): due July 21, 2019, filed July 29, 2019—eight (8) days late;

(h)     July 2019 MOR (ECF No. 99): due August 21, 2019, filed August 29, 2019—eight (8) days late;

(i)     August 2019 MOR (ECF No. 101): due September 21, 2019, filed September 26, 2019—five (5) days late;

(j)     November 2019 MOR (ECF No. 115): due December 21, 2019, filed January 8, 2020—eighteen (18) days late;

(k)     December 2019 MOR (ECF No. 117): due January 21, 2020, filed January 22, 2020—one (1) day late;

(l)     February 2020 MOR (ECF No. 119): due March 21, 2020, filed March 28, 2020—seven (7) days late;

(m)     March 2020 MOR (ECF No. 122): due April 21, 2020, filed April 27, 2020—

six (6) days late;

(n)     July 2020 MOR (ECF No. 178): due August 21, 2020, filed September 7, 2020—seventeen (17) days late;

(o)     September 2020 MOR (ECF No. 198): due October 21, 2020, filed October 23, 2020—two (2) days late;

(p)     November 2020 MOR (ECF No. 206): due December 21, 2020, filed January 22, 2021—thirty-two (32) days late;

(q)     December 2020 MOR (ECF No. 207): due January 21, 2021, filed January 22, 2021—one (1) day late;

(r)     January 2021 MOR (ECF No. 235): due February 21, 2021, filed March 2, 2021—nine (9) days late;

(s)     February 2021 MOR (ECF No. 246): due March 21, 2021, filed March 24, 2021—three (3) days late;

(t)     March 2021 MOR: due on April 21, 2021, not filed with the Court.

See Bankr. Case No. 18-07304-ESL12.

54.     On March 20, 2019, Condado filed a *Motion to Dismiss* Las Martas' Second Chapter 12 case asserting as cause "failure to file monthly operating reports." (Bankr. Case No. 18-07304-ESL12, ECF No. 45). The Court denied that *Motion to Dismiss*. Notwithstanding, the case was ultimately dismissed on April 22, 2021, through an *Opinion and Order* for unreasonable delay prejudicial to creditors and failure to timely file a confirmable plan. See *Opinion and Order*, Bankr. Case No. 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). The dismissal was affirmed on appeal by the U.S. Bankruptcy Appellate Panel for the First Circuit. See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022)[2]. **Importantly, with regards to Las Martas' continuous late filings of MORs in that Chapter 12 case, the BAP remarked that "[t]here is no reason to conclude that operating reports have any less significance in a chapter 12 context. Just as in chapter 11 cases, chapter 12 operating reports provide**

---

[2] Ironically, this is the *Opinion and Order* from the BAP affirming the dismissal of Las Martas' Second Bankruptcy Case for, *inter alia*, failure to file timely monthly operating reports.

necessary information to the court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts. Therefore, these entities have every reason to expect operating reports to be filed regularly, if not monthly." Id. at 497, n.8 (boldface added).

55.     Months later, Las Martas filed a third Chapter 12 bankruptcy petition on August 16, 2022 (Bankr. Case No. 22-02380-ESL12). In that case, Las Martas filed twenty (20) monthly operating reports. Of those twenty (20) reports, eleven (11) were filed late, a fifty-five percent (55%) late filing rate. The delays ranged from three (3) days to ninety-four (94) days past the applicable deadline. The specific filing delays were as follows:

(a)     August 2022 MOR (ECF No. 42): due September 21, 2022, filed October 11, 2022—twenty (20) days late;

(b)     October 2022 MOR (ECF No. 80): due November 21, 2022, filed December 19, 2022—twenty-eight (28) days late;

(c)     March 2023 MOR (ECF No. 130): due April 21, 2023, filed April 24, 2023—three (3) days late;

(d)     August 2023 MOR (ECF No. 147): due September 21, 2023, filed September 26, 2023—five (5) days late;

(e)     September 2023 MOR (ECF No. 236): due April 21, 2025, filed July 24, 2025—ninety-four (94) days late;

(f)     April 2025 MOR (ECF No. 251): due on May 21, 2025, filed August 7, 2025-seventy-eight (78) days late;

(g)     May 2025 MOR (ECF No. 251): due on June 21, 2025, filed August 7, 2025-forty-seven (47) days late;

(h)     June 2025 MOR (ECF No. 231): due July 21, 2025, filed July 23, 2025—two (2) days late;

(i)     July 2025 MOR (ECF No. 281): due August 21, 2025, filed September 16, 2025—twenty-six (26) days late;

(j)     August 2025 MOR (ECF No. 293): due September 21, 2025, filed October 8, 2025—seventeen (17) days late; and

(k)     September 2025 MOR (ECF No. 304): due October 21, 2025, filed October 30, 2025—nine (9) days late.

<u>See</u> Bankr. Case No. 22-02380-ESL12.

56.    On September 1, 2022, Condado filed a *Motion to Dismiss* Las Martas' Third Chapter 12 case (Bankr. Case No. 22-02380-ESL12, ECF No. 22) asserting as cause, inter alia, lack of reasonable likelihood of reorganization and bad faith. The Court granted dismissal on September 29, 2023.   <u>See</u> *Opinion and Order*, Bankr. Case No. 22-02380-ESL12, ECF No. 148, 2023 Bankr. LEXIS 2413, 2023 WL 6413170 (Bankr. D.P.R. 2023).   Las Martas appealed to the U.S. Bankruptcy Appellate Panel for the First Circuit (B.A.P. 1st Cir. Appeal No. 23-026), which reversed and remanded the case.   Following the remand, Las Martas has continued to file monthly operating reports late.   Accordingly, on October 27, 2025, Condado filed a renewed *Motion to Dismiss* (Bankr. Case No. 22-02380-ESL12, ECF No. 300) premised on "failure to file timely reports on a monthly basis" under Section 1208 of the Bankruptcy Code.   That motion remains *sub judice*.

57.    On December 14, 2018, the Debtor filed a Second Bankruptcy Petition (Bankr. Case No. 18-07310-ESL12, ECF No. 1).   **The Debtor did not file a single monthly operating report during 7-month Second Bankruptcy Case.**   That case was dismissed on 7/25/2019 for lack of eligibility (Bankr. Case No. 18-07310-ESL12, ECF No. 62).

58.    On November 8, 2023, the Debtor filed the instant Third Bankruptcy Petition (ECF No. 1). The Debtor filed three (3) MORs prior to the initial dismissal of the case on February 22, 2024 (ECF No. 104). Of those three (3) reports, two (2) were filed late:

(a)    November 2023 MOR (ECF No. 56): due December 21, 2023, filed January 8, 2024—eighteen (18) days late; and

(b)    December 2023 MOR (ECF No. 72): due January 21, 2024, filed January 22, 2024—one (1) day late.

59.    Following the reinstatement of the case on August 20, 2025 (ECF Nos. 132, 133), the Debtor again failed to file timely MORs.   As of October 24, 2025, the date Condado filed the instant *Motion to Dismiss* (ECF No. 135), the Debtor had not filed any monthly operating reports for August 2025 or September 2025.  On November 6, 2025, the Debtor untimely filed MORs for

August and September 2025:

    (a)    August 2025 MOR (ECF No. 141): due September 21, 2025, filed November 6, 2025—forty-seven (47) days late; and

    (b)    September 2025 MOR (ECF No. 142): due October 21, 2025, filed November 6, 2025—sixteen (16) days late.

<u>Also see</u> ECF No. 143, ¶ 23 (Debtor's admission that the September 2025 MOR was filed sixteen (16) days late).

    60.    We also note that JM Dairy also filed a Second Bankruptcy Petition on 04/18/2019 (Bankr. Case No. 19-02168, ECF No. 1), which was ultimately dismissed on 6/28/2021 (Bankr. Case No. 19-02168, ECF No. 97). During the pendency of that case, JM Dairy filed most of its MORs untimely:

| ECF No. | Report Period | Due Date | Date filed | Days Late |
|---|---|---|---|---|
| 18 | Apr 2019 | May 21, 2019 | May 23, 2019 | -2 |
| 30 | May 2019 | Jun 21, 2019 | July 4, 2019 | -13 |
| 33 | Jun 2019 | Jul 21, 2019 | Aug 22, 2019 | -32 |
| 34 | Jul 2019 | Aug 21, 2019 | Sep 2, 2019 | -12 |
| 35 | Aug 2019 | Sep 21, 2019 | Sep 26, 2019 | -5 |
| 36 | Sep 2019 | Oct 21, 2019 | Oct 21, 2019 | timely |
| 37 | Oct 2019 | Nov 21, 2019 | Nov 25, 2019 | timely |
| 38,39 | Nov 2019 | Dec 21, 2019 | Jan 8, 2020; Jan 9, 2020 | -18; -19 |
| 41 | Dec 2019 | Jan 21, 2020 | Feb 9, 2020 | timely |
| 45 | Jan 2020 | Feb 21, 2020 | Feb 20, 2020 | timely |
| 46 | Feb 2020 | Mar 21, 2020 | Apr 27,2020 | -37 |
| 47 | Mar 2020 | Apr 21, 2020 | May 19 2020 | -28 |
| 48 | Apr 2020 | May 21, 2020 | May 20, 2020 | timely |
| 49 | May 2020[3] | Jun 21, 2020 | June 20, 2020 | timely |
| 50 | Jun 2020 | Jul 21, 2020 | Jul 25, 2020 | -4 |
| 55 | Jul 2020 | Aug 21, 2020 | Sep 7, 2020 | -18 |
| 62 | Aug 2020 | Sep 21, 2020 | Sep 21 2020 | timely |
| 63,64 | Sep 2020 | Oct 21, 2020 | Oct 22, 2020 | -1 |

---

[3] The filing includes a summary report of operations from September 2023 through December 2024.

| 65 | Oct 2020 | Nov 21, 2020 | Nov 20, 2020 | timely |
| 67 | Nov 2020 | Dec 21, 2020 | Jan 17, 2021 | -27 |
| 68 | Dec 2020 | Jan 21, 2021 | Jan 25, 2021 | -4 |
| 71 | Jan 2021 | Feb 21, 2021 | Mar 7, 2021 | -14 |
| 72 | Feb 2021 | Mar 21, 2021 | Mar 24, 2021 | -3 |
| 81 | Mar 2021 | Apr 21, 2021 | Jun 11, 2021 | -52 |

**Total MORs Filed:** 24
**Total Late Filings:** 16
**Late Filing Rate:** 67%

61.    In summary, since June 2011, across the seven (7) joint bankruptcy cases filed by the Debtor and his wholly owned corporations (all serving as guarantors to Condado's Loan, namely, Las Martas and JM Dairy), the following pattern of noncompliance with report filing requirements is established:

(a)    In Las Martas' Second Chapter 12 case (18-07304), seventeen (17) of twenty-eight (28) monthly operating reports were filed late, and one (1) report was not filed with the Court, a sixty four percent (64%) late filing rate, with delays ranging from one (1) to eighty-four (84) days;

(b)    In Las Martas' Third Chapter 12 case (22-02380), eleven (11) of twenty (20) monthly operating reports were filed late, a fifty-five percent (55%) late filing rate, with delays ranging from three(2) to ninety-four (94) days;

(c)    In the Debtor's First Bankruptcy Case (11-05236), substantively consolidated with Las Martas' First Bankruptcy Case and JM Dairy's Bankruptcy Case, eight (8) of thirty-two (32) monthly operating reports were filed late, a twenty-five percent (25%) late filing rate, with delays ranging from two (2) to eighty-four (84) days;

(d)    In the Debtor's Second Bankruptcy Case (18-07310), not a single operating report was filed; and

(e)    In the Debtor's instant third Chapter 12 case (23-03681), four (4) of five (5) monthly operating reports were filed late, an eighty percent (80%) late filing rate, with delays ranging from one (1) to forty-seven (47) days.

(f)    In JM Dairy's Second Bankruptcy case (19-02168), 67% of the MORs were filed late.

62.    Collectively, across the four (4) most recent bankruptcy cases involving the Debtor and Las Martas, fifty-two (52) monthly operating reports have been filed or required to be filed. Of those fifty-two (52) reports, thirty (30) were either filed late or not filed at all, a fifty-eight percent

(58%) overall noncompliance rate.  This pattern spans nearly seven (7) years, from December

2018 through the present.

iii.    <u>Debtor's Proposed Finding of Facts</u>

Beyond the Stipulated Uncontested Facts, *supra*, the Debtor proffers no additional findings of

fact.

### III.    Proposed Conclusions of Law

i.    <u>Condado's Proposed Conclusions of Law</u>

*(A)    Dismissal under Section 1112(b), generally.*

63.    Section 1112(b)(1) of the Bankruptcy Code provides as follows:

Except as provided in paragraph (2) and subsection (c), on request of a party in
interest, and after notice and a hearing, the court shall convert a case under this
chapter to a case under chapter 7 or dismiss a case under this chapter, whichever
is in the best interests of creditors and the estate, **for cause** unless the court
determines that the appointment under section 1104(a) of a trustee or an examiner
is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (boldface added).

64.    "After the BAPCPA amendments, § 1112(b)(1) [of the Bankruptcy Code] is '<u>no

longer permissive</u>, but instead <u>mandates</u> conversion or dismissal if the movant establishes

exclusive cause, and no unusual circumstances establish that conversion or dismissal is not in

the best interest of creditors."  <u>In re Gilroy</u>, 2008 Bankr. LEXIS 3968, at *13, 2008 WL 4531982,

at *4 (B.A.P. 1st Cir. 2008) (citations omitted, emphasis added).

65.    The Bankruptcy Court's discretion to dismiss or convert a Chapter 11 case is

limited when cause is established.  <u>See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy)</u>, 2008 Bankr.

LEXIS 3968, at *1, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. 2008); <u>In re Costa Bonita Beach

Resort</u>, 513 B.R. 184, 195 (Bankr. D.P.R. 2014) (Lamoutte, B.J.) ("[t]he Court's discretion to

dismiss or convert a Chapter 11 case is limited if cause is established"); <u>In re AmeriCERT, Inc.</u>,

360 B.R. 398, 401 (Bankr. D.N.H. 2007) ("Prior to its amendment, the statute provided that a court

-19-

'may' dismiss the case upon finding cause, but amended section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances").

66.     Once cause to dismiss is established, the objecting party must properly establish unusual circumstances, as well as all factual elements required by Section 1112(b)(2)(A) and (B). See In re Costa Bonita Beach Resort, 513 B.R. at 195; In re Gilroy, 2008 Bankr. LEXIS 3968, at *13, 2008 WL 4531982, at *4.

67.     "A determination of unusual circumstances is 'fact intensive and contemplates facts that are not common to Chapter 11 cases.'" Francis v. Harrington (In re Francis), 2019 Bankr. LEXIS 826, at *15, 2019 WL 1265316 (B.A.P. 1st Cir. 2019), citing In re Costa Bonita Beach Resort, Inc., 513 B.R. at 195. Also see In re Luar Cleaners Inc., 2016 WL 3637857, at *1 (Bankr. D.P.R. 2016) (same); Collier on Bankruptcy ¶ 1112.05[2] (16th ed. 2022) (same).

68.     "'If no such unusual circumstances exist and/or the other requirements are not met, the Court **must** convert or dismiss the case." In re McKenna, 580 B.R. 1, 11 (Bankr. D.R.I. 2017) (original boldface), quoting Andover Covered Bridge, LLC, 553 B.R. 162, 176 (B.A.P. 1st Cir. 2016).

69.     The U.S. Bankruptcy Appellate Panel for our First Circuit has consistently affirms dismissals under § 1112(b) when "[t]he record is devoid of evidence presented by the debtor establishing unusual circumstances". Efron v. Candelario (In re Efron), 529 B.R. 396, 473 (B.A.P. 1st Cir. 2015).

70.     Usually, a determination of dismissal or conversion under Section 1112(b)(1) requires notice and a hearing. The "notice and hearing" requirement is defined as "after such notice is appropriate in the particular circumstances, and such opportunity for a hearing is appropriate in the particular circumstances". Id. at 196, citing 11 U.S.C. § 102(A). "However, a full evidentiary is not required, so long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions." In re De Jounghe, 334 B.R. 760, 766 (B.A.P. 1st Cir. 2005) (citations omitted). Also see In re Portela Torres, 2011

Bankr. LEXIS 4103 (Bankr. D.P.R. 2011) (dismissing a Chapter 11 case without an evidentiary hearing when the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions in writing).

(B)     *Judicial Notice, generally.*

71.     "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir.1990). Also see Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.), 2014 Bankr. LEXIS 3990, at *43, 2014 WL 4661943 (Bankr. D.P.R. 2014) (taking judicial notice of the allegations made by the parties in the lead bankruptcy case and in the complaints and related motions by the parties in the cases filed in another U.S. District Court).

72.     In the instant case, this Court may take judicial notice under Fed. R. Evid. 201(b)(2) of the documents filed and orders entered in the instant bankruptcy case, the First and Second Bankruptcy Cases, as well as in the bankruptcy cases filed by Las Martas and JM Dairy and those filed in the Foreclosure Case with the PR Court of First Instance.

(C)     *Failure to file even one MOR constitutes cause to dismiss under Section 1112(b)(4)(F) of the Bankruptcy Code.*

73.     Section 1112(b)(4)(F) specifically identifies "failure to file, within the time fixed by this title or by the court" or "failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" as constituting cause for dismissal. 11 U.S.C. § 1112(b)(4)(F).

74.     "**Failure to file monthly operating reports —and file them timely— is a serious breach of the debtor's fiduciary obligations and 'undermines the chapter 11 process.**'" In re DRTMG, 667 B.R. 862, 872 (Bankr. S.D. Ohio 2025) (boldface and underline added), quoting In re Lashley, 664 B.R. 408, 415 (Bankr. W.D. Ky. 2024).

75.     "Refusal or inability to provide financial disclosure sounds the death knell of a Chapter 11 case. The failure to file monthly operating statements … 'whether based on inability

to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.'" In re Arquidiocesis de San Juan de P.R., No. 18-04911 (EAG), 2019 Bankr. LEXIS 867, at *24-25, 2019 WL 1282796 (Bankr. D.P.R. Mar. 18, 2019) (quoting In re Tornheim, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995)).

76.     A "debtor's inability or belated effort to comply with his fiduciary duty to provide timely and complete financial disclosures does not excuse his obligation to do so; either one 'undermines the Chapter 11 process and constitutes cause for dismissal [or conversion].'" In re Alston, 756 F. App'x 160, 164 (3rd Cir. 2019) (quoting In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 199 (Bankr. D.P.R. 2014) (Lamoutte, B.J.)).

77.     Monthly operating reports are one of the most fundamental filing and reporting requirements imposed on a debtor-in-possession.  See Alston, 756 F. App'x at 164.  They "'are the lifeblood of the Chapter 11 process' **serving as the 'primary means for monitoring the debtor's compliance with the Code's requirements' and a 'litmus test for a debtor's ability to reorganize**.'" Id. (quoting In re Andover Covered Bridge, LLC, 553 B.R. 162, 173 (B.A.P. 1st Cir. 2016)) (boldface added); see also In re Four Wells, Ltd., 2016 Bankr. LEXIS 1673, at *29 (B.A.P. 6th Cir. Apr. 12, 2016) ("The reports serve an important purpose: they allow the UST and parties in interest to monitor a debtor's financial performance, activities and operations").  Given their critical role, filing timely, complete, and accurate monthly operating reports "is not a 'mere technicality.'" In re Whetten, 473 B.R. 380, 384 (Bankr. D. Colo. 2012) (quoting In re Ronald Kern & Sons, 2002 U.S. Dist. LEXIS 13884, 2002 WL 1628908, at *1 (W.D.N.Y. June 11, 2002)).

78.     "**Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work.**" L&R Dev. & Inv. Corp., 2020 Bankr. LEXIS 1025, at *17,2020 WL 1862377, at *6 (B.A.P. 1st Cir. Apr. 13, 2020) (boldface added).

79.     The Debtor boldly alleges that "failure to one MOR does not constitute cause for dismissal". Opposition to Motion to Dismiss, ECF No. 143, p. 2, ¶ 7.  But the Bankruptcy Appellate

Panel for the First Circuit "has previously ruled, in the context of a chapter 11 case, that *even one late MOR* can constitute cause for dismissal."  Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482, 497 n.8 (B.A.P. 1st Cir. 2022)[4] (italics added), citing L&R Dev. & Inv. Corp. v. Román-Ramos (In re L&R Dev. & Inv. Corp.), 2020 Bankr. LEXIS 1025, 2020 WL 1862377, at *6 (B.A.P. 1st Cir. 2020).  As noted by the BAP,

> Pursuant to § 1112(b)(4)(F), an "unexcused failure to satisfy timely **ANY** filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [chapter 11]" is cause for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(F).

> …

> **Section 1112(b)(4)(F) does not require multiple late filings.  "Any" late filing suffices for a cause determination under the statute.** See 11 U.S.C. § 1112(b)(4)(F).  Further, case law is unequivocal: "**A debtor ignores th[e] basic duty" to file timely monthly operating reports "at its own peril.**" In re Hoyle, No. 10-01484-TLM, 2013 Bankr. LEXIS 420, 2013 WL 210254, at *10 (Bankr. D. Idaho Jan. 17, 2013).

In re L&R Dev. & Inv. Corp., 2020 Bankr. LEXIS 1025, at *16 (original emphasis, underline added).

80.     The Debor (along with its corporations Las Martas and JM Dairy) have shown throughout the course of all their respective bankruptcies over the years a consistent disregard of their duty to timely file monthly operating reports.  This is not an exception or an isolated event, it is the norm.

81.     As noted in In re Stanford, No. 19-01846-TOM-11, 2021 Bankr. LEXIS 598, at *18-19, 2021 WL 973996 (Bankr. N.D. Ala. Mar. 15, 2021):

> **"[H]abitual non-compliance … calls in to question a debtor's ability to effectively reorganize."** In re Tucker, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009) (quoting In re 210 West Liberty Holdings, LLC, 2009 Bankr. LEXIS 1706, 2009 WL 1522047, at *7 (Bankr. N.D. W. Va. May 29, 2009)).  **If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case?**  Consequently, the "importance of [filing] ... monthly report[s] cannot be over-emphasized." In re Myers, 2005 Bankr. LEXIS 900,

---

[4] Ironically, this is the *Opinion and Order* from the BAP affirming the dismissal of Las Martas' Second Bankruptcy Case for, *inter alia*, failure to file timely monthly operating reports.

2005 WL 1324019, at *2 (10th Cir. BAP May 25, 2005).  **A debtor ignores this basic duty at its own peril.**

Id. (boldface added).

82.      The Debtor also alleges that it had no duty to file MOR's in this case because "no Order was entered by this Court reinstating or reactivating the [bankruptcy] proceedings". *Opposition to Motion to Dismiss*, ECF No. 143, p. 7, ¶ 22.  However, "a [bankruptcy] case remains dismissed **until such time as the order of dismissal is vacated**."  Chase v. CitiMortgage, Inc. (In re Chase), 578 B.R. 43, 53 (Bankr. D. Mass. 2017) (boldface and underline added).  Also see *e.g.* Crowley v. L.L. Bean, Inc., 361 F.3d 22, 26 n.6 (1st Cir. 2004) ("'formal' mandates similarly do not issue unless directed by the court", and as Fed. R. App. P. 41(a) "provides, '[u]nless the court directs that a formal mandate issue, **the mandate consists of a certified copy of the [appellate court's] judgment [and] a copy of the [appellate] court's opinion**, if any'") (boldface added); N.D. Ind. L. Civ. R. 200-1(e) ("The [District] court's mandate following a decision on appeal from the bankruptcy court consists of **a certified copy of the court's judgment and the court's written opinion**") (boldface added); Fed. R. App. P. 41(a) ("the mandate consists of a **certified copy of the judgment, a copy of the court's opinion**, if any, and any direction about costs" and "[t]he mandate is effective when issued") (boldface added); In re Capitol Hill Group, 330 B.R. 1, 3-4 (Bankr. D. D.C. 2005) (the "device of a mandate does not even exist in the case of a District Court's judgment disposing of an appeal from a bankruptcy court," and thus, the absence of mandate does not bar the bankruptcy court's enforcement of District Court's ruling); Lofstedt v. Kendall (In re Kendall), 510 B.R. 356, 361 (Bankr. D. Colo. 2014) ("a bankruptcy court's stay pending appeal terminated upon final determination by the district court").

83.      In this case, the certified copy of the District Court's *Opinion and Order* and *Judgment* reversing and vacating the dismissal of the instant case was issued on August 20, 2025 (Case No. 24-cv-01148-ADC, ECF Nos. 23 and 24) *and* filed with this Court (the mandate) at ECF Nos. 132 and 133.  Since that day, the instant case, along with the automatic stay and the

bankruptcy estate, were all reinstated.  If Condado had filed a motion to reopen the Foreclosure Case on <u>August 21, 2025</u>, the Debtor would have immediately sought § 362(a) remedies and 362(k) damages.  If Condado had taken property of the Debtor on <u>August 21, 2025</u>, the Debtor would have immediately sought § 542 remedies.  Accordingly, if the reinstatement of the automatic stay occurred on <u>August 20, 2025</u> with the District Court's mandate, then the bankruptcy estate and the Debtor's duty to file MORs were simultaneously reinstated.  A debtor-in-possession does not get to enjoy automatic-stay benefits and remain in possession of the bankruptcy estate without complying with its mandated reporting duties: they go hand-in-hand.  That is the law, and equity demands it.

84.     Thus, upon the *Opinion and Order* and *Judgment* by the District Cort vacating the dismissal of this case on <u>August 20, 2025</u> (ECF Nos. 132 and133), the Debtor's status as debtor-in-possession was reinstated.  And since then, the Debtor had to file the <u>August 2025 MOR</u> on or before <u>Monday, September 22, 2025</u>, and the <u>September 2025 MOR</u> on or before <u>October 21, 2025</u>.  And yet the Debtor tardily filed these MORs on <u>November 6, 2025</u> (ECF Nos. 141 and 142), that is, after Condado's *Motion to Dismiss* (ECF No. 135) and only a day prior to him filing the *Opposition to Motion to Dismiss* on November 7, 2025 (ECF No. 143).  **This *by itself* constitutes cause to dismiss under § 1112(b)(F)**.  <u>See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.)</u>[5], 638 B.R. at 497 ("*even one late MOR* can constitute cause for dismissal") (italics added, citations omitted).  The Debtor's *Opposition* does not aver (much less demonstrate) the required "unusual circumstances" to avoid dismissal under § 1112(b)(2), that is, facts that "are **not common to Chapter 11 cases**.'"  <u>In re Francis</u>, 2019 Bankr. LEXIS 826, at *15, 2019 WL 1265316 (B.A.P. 1st Cir. 2019) (boldface added), citing <u>In re Costa Bonita Beach Resort, Inc.</u>, 513 B.R. at 195.  <u>Also see In re Luar Cleaners Inc.</u>, 2016 WL 3637857, at *1 (Bankr. D.P.R. 2016) (same); <u>Collier on Bankruptcy</u> ¶ 1112.05[2] (16th ed. 2025) (same).

---

[5] Ironically, this is the *Opinion and Order* from the BAP affirming the dismissal of Las Martas' Second Bankruptcy Case for, *inter alia*, failure to file timely monthly operating reports.

The § 1112(b)(2) defense to dismissal of a chapter 11 case also requires an *additional* showing that: (a) there is a reasonable likelihood of confirmation of a plan within "a reasonable time"; (b) the grounds for dismissal for "cause" do not include those set forth in § 1112(b)(4)(A); *and* (c) "there is a reasonable justification for the act or omission of the debtor". In re Francis, 2019 Bankr. LEXIS 826, at *16. **None of these factors are pled, alleged, alluded or demonstrated in the** ***Opposition to Motion to Dismiss* (ECF No. 143).**

85.     The Debtor further alleges that he is under no obligation to file MORs for the months that this case was dismissed *at all*. Even if that were so, which we deny, the problem lies with **feasibility**, especially considering Condado's *Notice of Election Pursuant to Section 1111(b) of the Bankruptcy Code* (ECF No. 134). It bears questioning the obvious: how can the Debtor show feasibility without the trajectory reported MORs to pay a fully a fully matured loan (since 2015) that cannot be bifurcated under §1111(b) considering the Debtor's (and his related corporations) previous bankruptcies were twice dismissed? If "a debtor does not fulfill this basic [reporting] obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case?" In re Stanford, 2021 Bankr. LEXIS 598, at **18-19. Without these MORs, how can the Debtor carry his § 1112(b)(2) burden to demonstrate that there is a reasonable likelihood of confirmation of a plan within "a reasonable time"? How can he carry his burden to demonstrate that there is no diminution of the bankruptcy estate and a reasonable likelihood of reorganization under § 1112(b)(2)(B) (incorporating § 1112(b)(4)(A))?

86.     The Debtor has not filed any MOR of any month during the period that the case was dismissed (from February 2024 to July 2025) once dismissal was reversed and the case reinstated. With all due respect, if Condado has been subjected to the automatic stay since

-26-

August 20, 2025 and has been estopped from reopening and prosecuting the Foreclosure Case against the Debtor, then the Debtor has had the duty to file MORs timely.

87.     The Debtor's failure to timely file MORs for August 2025 and September 2025 constitutes an unexcused failure to satisfy the timely filing requirements under § 1112(b)(4)(F). This is not an isolated default at all: it is another example of the Debtor's (and his related corporations) consistent pattern in tardily filing MORs.  It is the norm, not the exception, and that is what makes these newest defaults so aggravating in the totality of the circumstances.  The Debtor and his corporations have enjoyed the benefits of being a debtor-in-possession and the automatic stay without complying with the most basic responsibilities such benefit entails.  As noted by this Court, "[b]ankruptcy is a give-and-take process, and, **in order for debtors to receive the benefits and protections of the Bankruptcy Code, *they must fulfill their role of complete disclosure to their creditors and the Court***".  In re Arquidiocesis de San Juan de P.R., No. 18-04911 (EAG), 2019 Bankr. LEXIS 867, at *28 (Bankr. D.P.R. Mar. 18, 2019) (boldface and italics added), quoting In re Justice, 2002 Bankr. LEXIS 1857, at *11 (Bankr. D.S.C. Aug. 29, 2002).

88.     We also note filing the pending the missing MOR's *after* a motion to dismiss under Section 1112(b)(4)(F) has been filed does not cure the cause to dismiss: "**the fact that Debtor attempted to cure the failure to file the MORs is insufficient**, as 'unexcused failures to report or file required information ... will constitute cause' to convert."  In re Costa Bonita Beach Resort, Inc., 513 B.R. at 199 (boldface added) (finding cause to dismiss under Section 1112(b)(4)(F) where the debtor filed the missing MORs just prior to the commencement of the hearing on the motion to dismiss).

89.     Under the post-BAPCPA language of § 1112(b)(1), the Court "shall" dismiss or convert the case once cause is established, unless unusual circumstances are shown.  The Debtor has failed to establish any unusual circumstances that would excuse the filing failures

(especially in the totality of the circumstances) or demonstrate that dismissal is not in the best interests of creditors and the estate.

90.     To the contrary, the record demonstrates a consistent pattern of serial bankruptcy filings and reiterated noncompliance with fundamental Chapter 11 obligations. This is the Debtor's Third Bankruptcy filing since 2011, with both prior cases resulting in dismissal.  His corporations have all filed for bankruptcy twice (and twice dismissed).  All the these failed cases undermine confidence in the viability of reorganization and prejudice creditors who have been stayed from pursuing their remedies for years in a Loan that matured in 2015.

ii.     Debtor's Proposed Conclusions of Law

**A.     Introduction**

Condado's Motion to Dismiss must be denied because it has failed to establish "cause" for dismissal.  First, Condado has failed to establish that the Debtor had a duty to file Monthly Operating Reports while the instant case was and remained dismissed for well over eighteen (18) months.  Therefore, because Condado has failed to established that the Debtor had a duty to file MOR's, the sole allegation that the Debtor filed a single MOR 17-days late cannot, as a matter of law, constitute "cause" for dismissal.   Second, even if the filing of a single MOR merely 17 days, after the case remained dismissed for well over 18-months, could establish cause - which it cannot - the Motion to Dismiss must nevertheless be denied because (a) of the existence of unusual circumstance and the fact that, (b) the Plan is likely to be confirmed within a reasonable amount of time.

**B.     Section 1112(b) Motion to Dismiss Standard.**

Although the Code does not define "cause" as that term is used in §1112(b), the statute provides a non-exhaustive list of circumstances which do constitute cause for dismissal.  *See*, In re Costa Bonita Beach Resort, Inc., 479 B.R. 14, 38 (Bankr. D. P. R. 2012).  It is settled that "[t]he initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove … [that] there is cause for either conversion or dismissal."  *See*, In re Costa

Bonita Beach Resort, Inc. 513 B.R. 184, 195 (Bankr. D.PR. 2014); *see also*, *Slip Opinion*, In re Arquidiocesis De San Juan De Puerto Rico, Case #18-04911 (EAG), March 18, 2019. Accordingly, it is not "until the movant carries this burden" that the court is placed in a position to consider dismissal or conversion. Id. *see also,* Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed.2013). ("Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative."). Movant's failure to establish a prima facia case for cause is fatal to any relief requested under Section 1112(b). *See*, In re Capitol Food Corp. of Fields Corner, *supra* (in absence of a prima facia showing of cause, the Court need not consider further arguments.) In addition, if dismissal is sought, rather than conversion or conversion rather than dismissal, the moving party should demonstrate why the requested alternative is in the best interests of creditors and the estate. *See*, Collier op. cit. § 1112.04 [3] [b] [4]

      **C.    Argument**

      1.     Dismissal under 11 U.S.C. § 1112(b) is not automatic, even where a movant alleges "cause." The statute imposes a sequential and demanding burden-shifting framework that must be strictly satisfied before a Chapter 11 case may be dismissed. Courts have consistently held that dismissal is appropriate only when the movant meets its initial burden and all statutory elements are satisfied.

      2.     The statute then sets forth a non-exclusive list of what may constitute "cause" under § 1112(b). Among the enumerated examples is "an **unexcused failure** to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." (emphasis ours). 11 U.S.C. § 1112(b)(4)(F).

      3.     To begin with, the initial burden squarely rests on the movant to establish "cause" for dismissal by a preponderance of the evidence.  In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 195 (Bankr. D.P.R. 2014); *citing*, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. 2011).

As the Bankruptcy Court emphasized in <u>In re Costa</u> the directive that the Court "shall" dismiss or convert a case does not even become operative unless and until the movant first meets this burden. 513 B.R. 184, 195 (Bankr. D.P.R. 2014). Until that threshold showing is made, dismissal is legally unavailable.

4.      However, even if the movant were to establish "cause" dismissal still cannot be granted automatically. Importantly, the mere identification of "cause" merely permits the Court to proceed to the remaining statutory inquiries required under § 1112(b)(2).

5.      Section 1112(b)(2) further limits the circumstances under which a court may dismiss or convert a Chapter 11 case, even where "cause" has been asserted. Specifically, the statute provides that the Court **may not** dismiss or convert the case if it finds and specifically identifies "unusual circumstances" demonstrating that dismissal or conversion would not be in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(2). In such instances, dismissal is prohibited where the debtor, or any party in interest, establishes that: **(A)** there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and **(B)** the alleged grounds for dismissal arise from an act or omission of the debtor, other than those described in § 1112(b)(4)(A)[6], for which there exists a reasonable justification and which will be cured within a reasonable time fixed by the Court. *Id*. This provision reflects Congress's intent to prevent the harsh remedy of dismissal when a temporary or curable issue exists, and where reorganization remains viable and in the best. In other words, the statute mandates a holistic evaluation, not a mere mechanical application.

6.      Equally important to this Court's analysis is the legal effect of dismissal on a debtor's reporting obligations. Once a bankruptcy case is dismissed, the debtor ceases to be a debtor-in-possession, the bankruptcy estate terminates, and the duties imposed under Chapter 11, including the obligation to file Monthly Operating Reports, end by operation of law.

---

[6] § 1112(b)(4)(A) simply does not applies to the case. Said provision establishes "cause"  as: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. . . .

7.      Section 349 of the Bankruptcy Code expressly provides that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case. . ." unless the Court "for cause, orders otherwise." 11 U.S.C. § 349(b)(3).

8.      In other words, upon dismissal, the orderly structure of the bankruptcy estate is unwound, and the case returns the parties to the *status quo ante*. *See*, In re Melo, 496 B.R. 253, 256 (B.A.P. 1st Cir. 2013) ("The dismissal of a bankruptcy case 'normally results in dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings").

9.      Moreover, Chapter 11 debtor's status as debtor-in-possession status ends with such conversion and/or dismissal. *See*, e.g., In re CK Liquidation Corp., 343 B.R. 376, 385 (D. Mass. 2006) ("[w]hen a bankruptcy court converts an action from Chapter 11 to a Chapter 7 proceeding and appoints a Chapter 7 Trustee, this [action] terminate[s] [the debtor's] status as debtor-in-possession. In re CK Liquidation Corp., 343 B.R. 376, 385 (D. Mass. 2006); *citing* Lamie, 540 U.S. at 532, 124 S.Ct. 1023.

10.     Monthly Operating Reports are obligations that exist only while a bankruptcy estate is open and subject to the supervision of the Court. Once the case is dismissed, there is no estate to report on, no fiduciary duties to fulfill, and no oversight function requiring MORs. Accordingly, no Monthly Operating Reports can be due during a period in which the case is dismissed, absent an express order to the contrary, which did not exist here. Thus, because the dismissal of the case terminated the Debtor's status as a debtor-in-possession and unwound the estate, the reporting duties Condado invokes simply did not exist during the dismissal period and could not have been violated.

**D.    Application**

19.     Condado's dismissal rests on a premise that is both legally inaccurate and factually misleading. Prior to the dismissal of this case on February 22, 2024, the Debtor was fully current

with all Monthly Operating Reports. **As of that date, there were no MORs outstanding** and the Debtor had complied in full with every reporting obligation then in existence. *See*, Docket No. 56, 72 and 103.

20. Following dismissal, no duty to file Monthly Operating Reports arose because the Debtor was no longer a debtor-in-possession, the bankruptcy estate ceased to exist, and the supervisory authority of this Court was extinguished during the pendency of the appeal. *See*, 11 U.S.C. § 349(b). Monthly Operating Reports are not independent filing obligations; they exist only while a bankruptcy estate is open and subject to the Court's oversight. Accordingly, Condado's assertions that the Debtor "has not filed any MOR of any month while the case was dismissed" serves no purpose other than to distort the judicial record. *See*, Docket No. 135, p. 5 ¶ 23. As is evident from the record, no judicial order has ever been issued requiring such filings during that time. Nor Condado provides any statutory basis to claim a failure to file MORs during the dismissal period.  Hence, as a substantive matter, such assertions are hollow.

21. However, *assuming arguendo*, that one Monthly Operating Report became due after the remand, dismissal would still be improper. Since August 20, 2025, the Date the District Court entered its Opinion and Order, no Order was entered by this Court reinstating or reactivating the proceedings. Condado's Motion to Dismiss attempts to gloss over this procedural vacuum. The fact is, unrebutted by Condado, that no Order from this Honorable Court, nor any procedural rule cited by Condado, re-imposed upon the Debtor the obligation to file MOR's that ceased to exist upon dismissal; as explained *supra*.

22. Even if Condado now attempts to cure its failure to establish a prima facia case; under the circumstances of this case; no cause for dismissal exist.   At best – under the circumstance above described – the Debtor was delayed in filing a single MOR[7].  This because the MOR's that could be argued to have been due on October 21, 2025 was in fact filed on

---

[7] The August MOR, because the Opinion and Order was entered on August 20th (i.e., more than 15 days after the beginning of the Month), would have been due on October 21, 2025 with the September 2025 MOR.

November 6, 2025, or 16 days after – allegedly – it could have been due.  See, Dk. #142; see also, U.S. Trustee, Region 21, Chapter 11 Guidelines and Reporting Requirements (requiring MORs to be filed by the 21st day of the subsequent month). This, alleged reporting delay of sixteen (16) days, particularly following a period of 18-months during which the case was and remained dismissed and pending appeal does not arise to "cause for dismissal" as a matter of law.

23.    In that same light Condado's reliance on cases such as In re Costa Bonita Beach Resort, Inc. and L&R Development & Investment Corp., beyond merely outlining the applicable legal standard, is misplaced.  For example, In re Costa, dismissal was granted after this Honrable Court identified a litany of ongoing deficiencies, including multiple unfiled MORs over several months, failure to maintain insurance, unpaid taxes, and the absence of any reasonable prospect of rehabilitation. Id. 513 B.R. 184 (Bankr. D.P.R. 2014).  Likewise, L&R Development & Investment Corp involved numerous delinquent MORs, several filed late and without any extension nor any real justification. 2020 WL 1862377 (B.A.P. 1st Cir. Apr. 13, 2020), Here, the contrast could not be more stark. The Debtor was **fully current** on MORs at the time of dismissal. Equally, no MORs were due during the appeal because no bankruptcy estate or debtor-in-possession existed.

24.    Even assuming arguendo that the MOR's, post the August 20th Opinion and Order, were deemed  due, the pending MOR's were filed merely 16-days after such "due date."  As such, dismissal results improper under § 1112(b)(2) because all statutory elements preventing dismissal are present. First, this case presents "unusual circumstances" within the meaning of § 1112(b)(2), as the case was reinstated following an eithghteen (18) month appellate process, and no order was entered by this Court reactivating case administration.

25.    Second, allowing the case to proceed also serves the best interests of creditors and there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time now that the case has been returned to this Court's jurisdiction. Moreover, Debtor's Plan of

reorganization has already been filed. *See*, Docket No. 64. Allowing this case to proceed under Chapter 11, rather than dismissing it, maximizes the potential for creditor recovery, preserves the value of the estate, and promotes an orderly and supervised restructuring process.  Conversely, dismissal at this stage, would return the parties to an unmonitored, fragmented, and potentially litigious forum, forcing individual collection efforts and undermining the collective and equitable framework that Chapter 11 provides.  Creditors, particularly unsecured creditors, stand to benefit far more from a supervised process that allows the Debtor to pursue reorganization and present a confirmable plan that would result in an actual distriction to such unsecured creditors.  See, Docket #64.  Dismissal, on the other hand, would trigger a race to the courthouse, diminish estate value and only the secured creditor would benefit. In short, continuation of this case promotes transparency, judicial economy and objectives that dismissal simply would frustrate rather than advance.

26.     Third, to the extent the Court views the filing of a post-remand MOR as an "omission," such "omission" is reasonably justified given the procedural posture described above, and (ii) Debtor has already cured any deficiency - within a reasonable period of time even prior to this Honorable Court having fixed a period of time to do so. 11 U.S.C. § 1112(b)(2).

27.     Dismissal, the most severe remedy available, is not warranted under these facts. The Debtor's good-faith intent is clear, the alleged omission, if proven to have in fact occurred, was brief, procedural, and readily curable, and no creditor has suffered any prejudice. To the contrary, dismissing the case now would frustrate the very purpose for which this case was reinstated. Section 1112(b)(2) exists precisely to prevent the harsh result Condado seeks when a momentary or technical issue can be promptly remedied and when reorganization remains viable and in the best interests of all parties with interest.

### IV.     Proposed Witnesses

i.     Condado's Proposed Witness: Condado does not anticipate calling witnesses at the hearing, as the relevant facts are established by the docket and the parties' filings, from

which this court may take judicial notice.  However, Condado reserves the right to call witnesses (including Gabriel de Hoyos) in response to any evidence presented by the Debtor or if the Court determines that testimony is necessary.  Condado also reserves all rights and objections on all bases set forth in the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, Federal Rules of Evidence, and governing law or rules of similar import.

ii.  <u>Debtor's Proposed Witnesses</u>:

The Debtor does not anticipate calling witnesses at the hearing.  However, the Debtor reserves the right to call witnesses (Juan Manuel Barreto) in response to any evidence presented Condado or if the Court determines that testimony is necessary.  The Debtor also reserves all rights and objections on all bases set forth in the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, Federal Rules of Evidence, and governing law or rules of similar import.

**V.  <u>Proposed Evidence</u>**

i.  <u>Condado's Proposed Evidence</u>

Movant's ID A: Demonstrative Evidence of Late Operating Report Filings and Related Dismissal Motions as they arise from all bankruptcy proceedings by the Debtor and his related corporations.

Condado reserves the right to present evidence (including rebuttal evidence) during the hearing. Condado also reserves all rights and objections on all bases set forth in the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, Federal Rules of Evidence, and governing law or rules of similar import.

ii.  <u>Debtor's Proposed Evidence</u>

The Debtor reserves the right to request the Court to take judicial notice over Dockets #56, 72, 103, 141, and 142 of this Case.

<u>Prayer for Relief</u>

WHEREFORE, the Parties respectfully request the Court to accept this Pre-Trial Report in compliance with the *Amended Order and Notice Setting Hearing* (ECF No. 138) and grant any further relief that is equitable, just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 14th day of November 2025.

**THE BATISTA LAW GROUP, PSC.**
Counsel for the Debtor
Capital Center I
239 Ave Arterial de Hostos Ste 206
San Juan PR 00918-1475
**Telephone**: (787) 620-2856
**Facsimile**: (787) 777-1589

*/s/ Jesus E. Batista Sánchez*
Jesus E. Batista Sánchez
USDC-PR # 227014
E-mail:  jeb@batistasanchez.com

**Ferraiuoli** LLC
Attorneys for Condado
PO Box 195168
San Juan, PR 00919-5168
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com